## BURROW, Appellant, v. NATIONAL BENEFIT ASS'N OF MITCHELL, Respondent

### (38 N. W.2d 256.)

(File No. 9057. Opinion filed June 27, 1949)

**T. R. Johnson**, Sioux Falls, for Plaintiff and Appellant.

**Miller, Kaye & Hanson**, Mitchell, for Defendant and Respondent.

RUDOLPH, J. The question presented by this appeal is whether there is due under a certain policy of life insurance, in which appellant Matie Burrow is named as beneficiary, the sum of $150 as contended by respondent company or the sum of $1,000 as contended by appellant.

The parties stipulated that the policy of insurance described in the complaint was in force at the time of the death of the insured.

The defendant is an assessment life insurance association organized as such under the provisions of our law

which are now contained in SDC 31.19. On June 6, 1933, the defendant association issued its certificate to Charles A. Burrow wherein it was agreed that upon the death of the insured the association would pay to the beneficiary $1,000. The certificate contemplated the payment of certain assessemnts and dues to keep the insurance in force and provided "Failure to pay any dues or assessments when due or within the period of grace shall automatically terminate this contract." Charles A. Burrow paid all assessments and dues until the month of September, 1946, when for reasons not here material he defaulted in the payment of an assessment levied by the association in the amount of $1.00. Shortly after the default in the payment of the assessment there was some correspondence relative to the reinstatement of the certificate. On October 9th, 1946, appellant was advised by the company as follows: "We are very sorry but we cannot consider Mr. Charles A. Burrow's application for reinstatement inasmuch as he is now past our age limit. Our by-laws state that we cannot consider a new application or reinstatement application for anyone over the age of sixty-four." It appears without dispute that Mr. Burrow was 66 years of age at the time he defaulted in the payment of the assessment. This letter of the company dated October 8th advising that Mr. Burrow was not eligible for insurance was followed by a second letter from the defendant company signed by its vice president as follows: "We are today reconsidering your case and are enclosing an application for reinstatement. Please fill this out correctly and sign and return to us for our attention. Kindly enclose $1.00 reinstatement fee with your application. The reason we are doing this is because of your past good paying record." On October 26th, following this letter Mr. Burrow signed the application for reinstatement and returned it to the company, together with the $1.00 requested. Thereafter the company accepted and Mr. Burrow paid all dues and assessments that were levied until the time of his death. The application for reinstatement signed by Mr. Burrow contained the following: "I agree that the acceptance and approval by the Company of this application for re-instatement constitutes the making of a new and additional contract

between me and the Company; * * * and that my policy, if and when reinstated shall thereafter be in force only for the amount of insurance to which I am entitled under the foregoing schedule at my attained age at the date of reinstatement." The schedule contained in the application relating to the amount of insurance at the date of reinstatement is as follows:

"Ages 10 to 45 inclusive $1,000.00
Ages 46 to 50 inclusive $  750.00
Ages 51 to 55 inclusive $  500.00
Ages 56 to 60 inclusive $  250.00
Ages 61 to 64 inclusive $  150.00."

The schedule makes no provision for insurance after the age of 64.

The respondent contends and the trial court held that the application for reinstatement and its acceptance by the company in October, 1946, constituted the making of a new contract for insurance in the amount of $150. The appellant contends that the original contract of insurance is in force. We agree with appellant.

It may be conceded that had the insured been within the age limits set forth in the application for reinstatement, the execution and acceptance of the application would constitute a new contract of insurance for a new and different amount than provided in the original policy, depending upon the age of the applicant. But applicant, in this case, was beyond any age bracket set forth in the application, and the company was so advised. We find no justification for holding that there was a new contract limiting the insurance to $150. The applicant was not within the age group to which the $150 limit was applicable and there is nothing in the record to indicate that he intended to apply for reinstatement under any such limitation. After first being advised by the company that he was beyond the age limit for reinstatement, he was subsequently advised that because of his "past good paying record" the company would reinstate him. The company placed no limitation upon the amount of insurance after reinstatement, and we are convinced from the statements contained in the letters that Burrows was

justified in believing that because of his past good paying record the company was waiving his one default in payment of assessments and reinstating his original policy. This belief was no doubt confirmed by the application sent by the company which made no provision for a new contract of insurance after age 64.

It is within the power of the officers of a mutual benefit association to waive provisions of the by-laws. Peterson et al. v. Grand Lodge, A. O. U. W. of South Dakota, 36 S. D. 539, 156 N. W. 70, L. R. A. 1916F, 751. As to the general rule of waiver relating to mutual benefit societies, see 46 C. J. S., Insurance, § 1529. So in this case we believe the company through the acts of its officers has waived the default in the payment of the premium.

Obviously, the company intended that the insurance be reinstated, and has stipulated that the policy of insurance was in force at the time of the death of the insured. The dispute relates only to the amount of insurance in force. As stated above, we find no basis for the determination that there was a new contract limiting the insurance to $150. On the other hand, we believe that by its letters and acts the company waived the default and must be held to have continued the original policy in force.

The judgment appealed from is reversed.
All the judges concur.